**RECORD NO. 14-1527**

# IN THE
# United States Court of Appeals
## FOR THE FOURTH CIRCUIT

---

REDNER'S MARKETS, INC.,

*Plaintiff - Appellee,*

v.

JOPPATOWNE G.P. LIMITED PARTNERSHIP,

*Defendant - Appellant.*

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
AT BALTIMORE

(Honorable Richard D. Bennett, U.S.D.J.)

---

### OPENING BRIEF OF APPELLANT

---

Charles M. Kerr
Kathleen M. McDonald
KERR MCDONALD, LLP
111 South Calvert Street, Suite 1945
Baltimore, Maryland 21202
(410) 539-2900
ckerr@kerrmcdonald.com
kmcdonald@kerrmcdonald.com

*Counsel for Appellant*
*Joppatowne G.P. Limited Partnership*                    July 14, 2014

LANTAGNE LEGAL PRINTING 801 East Main Street Suite 100 Richmond, Virginia 23219 (804) 644-0477
A Division of Lantagne Duplicating Services

## UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
## DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of all parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. 14-1527        Caption: Redner's Markets, Inc. v. Joppatowne G.P. Limited Partnership

Pursuant to FRAP 26.1 and Local Rule 26.1,

Joppatowne G.P. Limited Partnership
(name of party/amicus)

who is _____appellant_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.    Is party/amicus a publicly held corporation or other publicly held entity?  ☐ YES ☑ NO

2.    Does party/amicus have any parent corporations?                    ☐ YES ☑ NO
      If yes, identify all parent corporations, including grandparent and great-grandparent corporations:

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                                      ☐ YES ☑ NO
      If yes, identify all such owners:

4.    Is there any other publicly held corporation or other publicly held entity that has a direct
       financial interest in the outcome of the litigation (Local Rule 26.1(b))?    ☐ YES ☑ NO
       If yes, identify entity and nature of interest:

5.    Is party a trade association? (amici curiae do not complete this question)  ☐ YES ☑ NO
       If yes, identify any publicly held member whose stock or equity value could be affected
       substantially by the outcome of the proceeding or whose claims the trade association is
       pursuing in a representative capacity, or state that there is no such member:

6.    Does this case arise out of a bankruptcy proceeding?    ☐ YES ☑ NO
       If yes, identify any trustee and the members of any creditors' committee:

Signature: _Kathleen M. McDonald_    Date: _____ June 27, 2014 _____

Counsel for: _Joppatowne G.P. Limited P'ship_____

## CERTIFICATE OF SERVICE
****************************

I certify that on ____ June 27, 2014 ____ the foregoing document was served on all parties or their
counsel of record through the CM/ECF system if they are registered users or, if they are not, by
serving a true and correct copy at the addresses listed below:

Samuel W. Cortes, Esq., John J. Miravich, Esq.,
John Breckenridge Smith, Esq., and
Jason Hobbes, Esq.
Fox Rothschild LLP
747 Constitution Drive, Suite 100
P.O. Box 673
Exton, PA 19341

_Kathleen M. McDonald_                          _____ June 27, 2014 _____
        (signature)                                                 (date)

- 2 -

# TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................i-ii

TABLE OF AUTHORITIES .......................................................iii-vi

JURISDICTIONAL STATEMENT .......................................................1

STATEMENT OF THE ISSUES UPON WHICH
JOPPATOWNE APPEALS ..................................................................2

STATEMENT OF THE CASE...........................................................3

STATEMENT OF FACTS .................................................................8

SUMMARY OF ARGUMENT ..........................................................16

ARGUMENT ...................................................................................18

  I.    Standard of Review ..............................................................18

  II.    The District Court Erred in Granting
        Redner's Motion for Contempt.................................................19

    A. The District Court abused its discretion in failing to dismiss
       Redner's motion for contempt for lack of subject matter jurisdiction
       because the amount in controversy did not exceed \$75,000, as
       required under 28 U.S.C. §1332 .................................................19

    B. The District Court erred in granting Redner's motion for contempt
       because Joppatowne did not violate the Injunction Order ...........................28

    C. The District Court erred in summarily granting Redner's
       contempt motion without holding a trial or other
       evidentiary hearing and without affording Joppatowne
       discovery on Redner's allegations.................................................32

D. The District Court erred in not dismissing Redner's motion
for contempt for failing to comply with pleading
requirements for such motions ...................................................................36

   1. Redner's violated FRCP 8's requirement that the grounds
for subject-matter jurisdiction must be pleaded .......................................36

   2. Redner's failed to allege sufficient facts to show
entitlement to contempt ..............................................................37

   3. Redner's failed to comply with FRCP 19's pleading
requirements ...........................................................................39

E. The District Court Erred in Considering, and in Not Striking,
Evidentiary Proffers by Redner's that did not comply with
the requirements of Federal Rule of Evidence 1101(b) ...............................42

   1. The purported oral communications recited in each of
the declarations between Redner's investigators and
"employees" of "Lapp's" are hearsay and should have
been struck by the District Court...............................................45

   2. Redner's failed to lay a foundation for the assertions in the declarations
that the unidentified individuals mentioned in those declarations were
"employees"...............................................................................47

   3. The District Court erred in failing to strike and/or disregard the
unsupported and/or improperly supported factual assertions
made by Redner's in its memorandum in support of its motion
for contempt...............................................................................49

CONCLUSION....................................................................................53

LOCAL RULE 34(a) STATEMENT ....................................................54

CERTIFICATE OF COMPLIANCE WITH RULE 32(a) ...............................54-55

CERTIFICATE OF SERVICE .............................................................55

# TABLE OF AUTHORITIES

**CASES:**

*Ashcraft v. Conoco, Inc.,* 218 F.3d 288 (4th Cir. 2000) ..............................18, 31, 34

*Blank v. Bethlehem Steel Corp.*, 758 F. Supp. 697 (M.D. Fla. 1990).....................50

*Champ v. Calhoun County Emergency Management Agency*,
    226 Fed. Appx. 908 (11th Cir. 2007)............................................................ 48-49

*Evans v. Technologies Applications & Serv. Co.,*
    80 F. 3d 954  (4th Cir. 1996) ........................................................................43

*Everett v. Pitt County Bd. of Ed.*, 678 F.3d 281 (4th Cir. 2012) ............................18

*Federal National Mortgage Association v. Bell*, _____ Fed. Appx. ____,
    2014 WL 2809008 (4th Cir. 06/23/2014) ........................................................31

*Federal Trade Commission v. H.G Kuykendall,* 312 F. 3d
    1329 (10th Cir. 2002).....................................................................................18

*Green v. United States*, 356 U.S. 165 (1958) ...........................................................32

*In re: General Motors Corp.*, 61 F. 3d 256 (4th Cir. 1995) ...................................44

*International Union of United Mine Workers of America v Bagwell,*
    512 U.S. 821 (1994)............................................................................ 32, 33-34

*James v. GMAC Mortgage, LLC*, 772 F. Supp. 2d 307 (D. Me. 2011)...................50

*Joy Family Ltd. Partnership v. United Financial Banking
    Companies, Inc.*, 2013 WL 4647321 (D. Md. 2013)........................................36

*Lorraine v. Markel American Insurance Company*,
    241 F.R.D. 534 (D. Md. 2007)........................................................................51

*McBurney v. Cuccinelli*, 616 F.3d 393 (4th Cir.2010) ...........................................19

*McBurney v. Young*, _____U.S.___, 133 S.Ct. 1709 (2013).....................................19

*Momin v. Maggiemoo's International, LLC*, 205 F.Supp.2d 506
(D.Md.2002)............................................................................................20

*Mostofi v. Network Capital Funding Corp.*,
798 F. Supp. 2d 52 (D.D.C. 2011).....................................................44

*Orsi v. Kirkwood*, 999 F. 2d 86 (4th Cir. 1993)...................................... 43-44

*Parker v. Danzig*, 181 F. Supp. 2d 584 (E.D. Va. 2001).........................48

*Planmatics, Inc. v. Showers*, 137 F. Supp. 2d 616 (D. Md. 2001),
*aff'd*, 30 Fed. Apx. 117 (4th Cir. 2002) ............................................25

*Precision Piping and Instruments, Inc.*, 951 F. 2d 613 (4th Cir. 1991) .................48

*Renta v. County of Cook*, 735 F. Supp. 2d 957 (N.D. Ill. 2010)..............................50

*Salvaggio v. Safeco Property & Casualty Insurance Companies*,
458 F. Supp. 2d 283 (E.D. La. 2006).................................................44

*Shanaghan v. Cahill*, 58 F. 3d 106 (4th Cir. 1995) ..............................23, 25, 28, 53

*Schultz v. Kelly*, 188 F. Supp. 2d 38 (D. Mass. 2002) ...........................................50

*The Maryland Highway Contractors Association, Inc. v. Maryland*, 933
F. 2d   1246  (4th Cir.), *cert. denied*, 502 U.S. 939 (1991) ...............................43

*Thomas, Head & Greisen Employees Trust v. Buster*, 95 F. 3d
1449 (9th Cir. 1996).........................................................................18

*United States v. Neal*, 101 F. 3d  993 (4th Cir. 1996 ) ......................................32, 43

*United States ex rel. Vuyyuru v. Jadhav*, 555 F.3d 337 (4th Cir.),
*cert. denied*, 558 U.S. 875 (2009).....................................................19

*U.S. Department of Housing and Urban Development v. Cost
Control Marketing & Sales Management of Virginia, Inc.*,
64 F. 3d 920 (4th Cir. 1995), *cert. denied*, 517 U.S. 1187 (1996) ..................43

*Wiggins v. North American Equitable Life Assurance Co.*,
   644 F. 2d 1014 (4th  Cir. 1981) ......................................25

## CONSTITUTIONAL PROVISIONS, STATUTES, AND RULES:

28 U.S.C. §1291 ...........................................................................2

28 U.S.C. §1332 .............................................. 2, 19-21, 23, 25, 42

FRCP 8 ............................................................................... 36-37

FRCP 8(a)(1) ............................................................................36

FRCP 8(a)(2) ............................................................................39

FRCP 12(b)(2) ..........................................................................41

FRCP 12(h)(2) ..........................................................................40

FRCP 19 ................................................................................5, 39

FRCP 19(a) ........................................................................40, 42

FRCP 19(a)(2) ..........................................................................40

FRCP 19(b) ........................................................................40, 42

FRCP 19(b)(2) .................................................................... 40-41

FRCP 19(c) .....................................................................27, 39, 42

FRCP 56(c)(4) ..........................................................................43

FRCRP 42(A) ..........................................................................43

FRE 101 ...................................................................................42

FRE 101(b)(1) ..........................................................................42

FRE 801(c) ..............................................................................46

FRE 801(d)(2) ................................................................................... 48-49

FRE 801(d)(2)(C) ..............................................................................46, 48

FRE 801(d)(2)(D) ..............................................................................46, 48

FRE 802 ...............................................................................................46

FRE 901 ...............................................................................................44

FRE 1101(b) ...................................................................................3, 35, 42

## OTHER AUTHORITIES:

5A C. Wright and A. Miller, *Federal Practice and Procedure*: Civil 3d
§ 1392 (2004) .....................................................................................40

7 C. Wright, A. Miller, and M. Kane, *Federal Practice and Procedure*: Civil 3d
§1610 (2001) ......................................................................................41

7 C. Wright, A. Miller, and M. Kane, *Federal Practice and Procedure*: Civil 3d
§1625 (2001) ......................................................................................42

11A C. Wright, A. Miller, and M. Kane, *Federal Practice and Procedure*: Civil
§ 2960 (2013) .....................................................................................36

## JURISDICTIONAL STATEMENT

This appeal is taken from an order and final judgment of the United States District Court for the District of Maryland (the "District Court") entered April 30, 2014   (the "Contempt Order"), holding Defendant/Appellant Joppatowne G.P. Limited Partnership ("Joppatowne") in contempt of a previously-issued permanent injunction.   The permanent injunction arose out of a commercial lease dispute between Joppatowne (as landlord) and its tenant, Plaintiff/Appellee Redner's Markets, Inc.'s ("Redner's").   Following a bench trial on the merits regarding whether the operation of stall holders in an Amish market in Joppatowne's shopping center violated a restrictive-use covenant in its lease with Redner's, the District Court issued an Order of Permanent Injunction dated June 13, 2013 (the "Injunction Order").[1]   The Injunction Order required that, within ten days, Joppatowne had to cause to be removed from its shopping center two vendor stalls in the Amish market -- All Fresh Seafood and Produce ("All Fresh") and Lapps' Fresh Meats ("Lapp's") -- the only stall holders whose operations were found to be in violation of the restrictive-use covenant.

Four months after Joppatowne's timely compliance with the Injunction Order, Redner's moved to hold Joppatowne in contempt of the that Order,

---

[1] The Injunction Order, along with other aspects of the final judgment in the underlying action, are the subject of three cross-appeals, Nos. 13-1766, 13-1974, and 14-1527, currently before this Court, as consolidated by Order dated October 18, 2013 (Docket No. 230).

allegedly for permitting activities proscribed by the Injunction Order at the former Lapp's Fresh Meats location. Without holding a trial or other evidentiary hearing, the District Court summarily issued its Contempt Order: (1) declaring Joppatowne in contempt of the Injunction Order and issuing sanctions against it; (2) denying Joppatowne's cross-motion to dismiss Redner's contempt motion for lack of subject-matter jurisdiction; and (3) denying Joppatowne's cross-motion to strike certain inadmissible statements in, and photographs attached as exhibits to, Redner's contempt motion.  Over Joppatowne's jurisdictional objections, the District Court exercised diversity jurisdiction over Redner's post-trial contempt proceedings pursuant to 28 U.S.C. §1332.   This Court has jurisdiction over this appeal pursuant to 28 U.S.C. §1291.

## STATEMENT OF THE ISSUES UPON WHICH JOPPATOWNE APPEALS

The issues in this appeal are as follows:

1.     Having previously entered a final judgment in which Redner's was awarded monetary damages in the total amount of $2.00 and in the absence of a continuing jurisdiction provision in the Injunction Order, did the District Court have subject-matter jurisdiction over Redner's post-trial motion for contempt?

2.     Given that Joppatowne indisputably complied with the express terms of the Injunction Order on or before its stated compliance date, did the District

2

Court err in holding Joppatowne in contempt for permitting allegedly-proscribed sales activities in the shopping center four months later?

3.      In the presence of genuinely-disputed material facts regarding whether the business operations at the former Lapp's Fresh Meats location violated the Injunction Order, did the District Court err by summarily issuing its Contempt Order without a trial or other evidentiary hearing?

4.      Given Redner's failure to comply with multiple pleading requirements for a contempt motion, did the District Court err in summarily issuing its Contempt Order?

5.      Did the District Court err where, in issuing its Contempt Order, the District Court improperly relied on inadmissible evidence under Federal Rule of Evidence 1101(b) and denied Joppatowne's motion to strike those improper proffers?

## <u>STATEMENT OF THE CASE</u>

On September 15, 2011, Redner's filed an amended complaint in which it alleged, <u>inter alia</u>, that Joppatowne breached a provision of a written lease between Redner's and Joppatowne. JA-I-25. The lease provision at issue, entitled "Landlord's Restrictive Use Covenant,"[2] addressed, and in many instances permitted, subject to certain restrictions, what other businesses in the Joppatowne

---

[2] JA-II-1102-04.

3

Plaza Shopping Center could sell. Redner's claimed that the Amish Farmer's Market, which operated at the Shopping Center pursuant to a lease dated October 21, 2009, between Joppatowne and non-party J.T.F., LLC ("JTF"), JA-II-1155, 1160, and various stall holders therein, most of whom are Amish residents of Pennsylvania and who are also not parties, violated that restrictive-use covenant.

Redner's claims were tried, without a jury, over nine days spanning a time period of 15 months, by Senior United States District Judge Benson E. Legg, and, after his retirement from the bench, United States District Judge Richard D. Bennett.  At the conclusion of the first trial phase, by Memorandum Opinion, entered on January 24, 2013, JA-I-540-80, Judge Legg rejected Redner's claim that the Farmer's Market in its entirety violated the restrictive use covenant.  Rather, Judge Legg concluded that the size and business operations of each individual stall within the Farmer's Market had to be analyzed against the complex provisions of the restrictive-use covenant of the Lease.  Based on this analysis, Judge Legg found that several vendor stalls (Dutch Pantry Fudge, Kreative Kitchen, and Dutch Delights) in the Farmer's Market did not violate restrictive-use covenant.  Nevertheless, Judge Legg found the business operations of All Fresh and Lapp's did violate the restrictive-use covenant.  As to certain other stalls in the Farmer's Market (Beiler's BBQ, Beiler's Baked Goods, and King's Cheese and Deli) and two other vendor stalls, Judge Legg deferred a determination pending a second trial

4

phase. Judge Legg also rejected what he termed "threshold legal defenses," raised by Joppatowne, that JTF and the stallholders were necessary or indispensible parties, under Federal Rule 19, that the restrictive-use covenant did not apply because Redner's was in breach of its obligation, under the Lease, to pay percentage rent on gasoline sales, and that Redner's failed to give proper notice of the claimed breach.

Due to Judge Legg's retirement from the bench, the case was assigned to Judge Bennett on January 24, 2013, the same day Judge Legg issued his Orders. By Letter Order dated May 23, 2013,[3] Judge Bennett ordered that the bench trial on "the remaining issues of liability and traditional damages" would be held July 1-3, 2013, on three issues: (1) whether Beiler's BBQ, Beiler's Baked Goods, and King's Cheese and Deli violated the restrictive-use provisions of the Redner's lease, (2) whether the two "Vendor Stalls" referenced in Judge Legg's January 24, 2013, Memorandum and Order, violated those provisions, and (3) the amount of damages, if any, to be awarded to Redner's Markets for Joppatowne's breach of the restrictive-use covenant under traditional damages theories.

Three weeks prior to the scheduled second trial phase, Judge Bennett, on June 13, 2013, issued a Memorandum Opinion and Order, JA-II-680-93, in which

---

[3]     That Letter Order is found at JA-VI-2670-71 in the Joint Appendix in consolidated appeal No. 13-1766. It is Doc. No. 155 in the District Court record. JA-I-701.

5

he granted Redner's Motion for Injunction ("the Injunction Order"). That Injunction Order required Joppatowne to "cause All Fresh Quality Seafood & Produce and Lapp's Fresh Meats to be removed from the Amish Farmer's Market within ten days," or be subject to unspecified fines. Joppatowne noted its appeal of the Injunction Order on June 14, 2013.

On July 1st and 2nd, 2013, Judge Bennett, as fact-finder, tried the three issues he identified in his Letter Order, dated May 23, 2013. On July 11, 2013, Judge Bennett issued a Memorandum Opinion, JA-III-1194-1214, with an Order and Judgment of the same date, JA-III-1215-17. In that Order and Judgment, Judge Bennett: (1) entered judgment in favor of Redner's and against Joppatowne on Judge Legg's previous finding that All Fresh and Lapp's Fresh Meats violated the restrictive-use covenant; (2) entered judgment in favor of Joppatowne and against Redner's on Judge Legg's previous finding that Dutch Pantry Fudge, Kreative Kitchen, and Dutch Delights did not violate the restrictive-use covenant; (3) entered judgment in favor of Joppatowne and against Redner's on Redner's abandoned claim that Beiler's BBQ, King's Cheese & Deli, and the two other vendor stalls violated the restrictive-use covenant; (4) entered judgment in favor of Joppatowne and against Redner's on Redner's claim that Beiler's Baked Goods violated the restrictive-use covenant; (5) entered judgment in favor of Joppatowne and against Redner's on Redner's claims for lost profits damages related to All

6

Fresh and Lapp's Fresh Meats; (6) incorporated the Order of Injunction with respect to All Fresh and Lapp's Fresh Meats; and (7) incorporated "any and all prior rulings made by the Court disposing of any claims against any parties." The District Court Order and Judgment entered final judgment as to such claims. JA-III-1215-17.

On September 17, 2013, Judge Bennett disposed of Redner's post-trial motion and amended the judgment so as to award Redner's nominal damages for the All Fresh and Lapp's Fresh Meats breaches, as found by Judge Legg, of $1.00 each, for total damages awarded to Redner's of $2.00. JA-III-1274-89. Joppatowne noted its appeal of Judge Bennett's Orders on July 30, 2013. Redner's noted its cross-appeal on October 16, 2013. As noted above, all of these appeals have been consolidated by the Fourth Circuit and are presently pending.

On December 2, 2013, Redner's filed in the district court a "Motion for Sanctions and to Declare Defendant in Contempt of the Court's June 13, 2013, Order entering a Permanent Injunction." JA-III-1290-1368. On December 16, 2013, Joppatowne filed a motion to strike certain statements in, and photographs attached to, declarations submitted as exhibits to Redner's motion for contempt and to strike certain unsupported factual assertions made by Redner's in its memorandum in support of that motion. JA-III-1369-89. Joppatowne also moved, on December 19, 2013, to dismiss Redner's motion for contempt because the

7

District Court lacked jurisdiction over the subject-matter of that motion. JA-III-1390-94. Joppatowne also filed, the same day, its memorandum in answer and opposition to Redner's motion to declare Joppatowne in contempt. JA-III-1395-1514.

Judge Bennett heard the motions via telephone conference call on April 29, 2014. JA-III-1598-1640. The same day, Judge Bennett issued his Contempt Order, docketed on April 30, 2014, denying Joppatowne's motion to dismiss for lack of subject-matter jurisdiction, denying Joppatowne's motion to strike, granting a motion filed by Redner's for leave to file an untimely reply, granting Redner's motion for contempt, and awarding Redner's, as a sanction, attorneys' fees and expenses in an amount to be determined.[4] JA-III-1643. On May 29, 2014, Joppatowne filed its appeal of the Order signed by Judge Bennett on April 29, 2014. JA-III-1741.

## STATEMENT OF FACTS

The District Court's June 13, 2013, Injunction Order, JA-II-693, required Joppatowne to "cause All Fresh Quality Seafood & Produce and Lapp's Fresh Meats to be removed from the Amish Farmers' Market at Joppatowne Plaza Shopping Center within ten days." That 10-day period ran on June 23, 2013. All Fresh had terminated its vendor-stall business in the flea market premises that

---

[4] As of the filing of Joppatowne's Brief, the District Court has not entered any award of attorneys' fees.

Joppatowne leased to JTF, LLC, as of August 30, 2012.[5] Lapp's Fresh Meats terminated the operation of its vendor stall in the Amish Farmers' Market as of Sunday, June 23, 2013.[6]  Redner's, in its contempt motion and supporting materials, did not allege to the contrary, and it later conceded that this was so.  JA-III-1601-03. The District Court's Injunction Order, on its face, was finite in its duration. The Order did not deal with potential future factual scenarios nor did it define or bar "butcher-shop" or "seafood-shop" scenarios, based on post-June 23, 2013, sales activities, that could give rise to a future claim by Redner's for breach by Joppatowne of the lease between Redner's and Joppatowne. Although the District Court, in its July 11, 2013, Order and Judgment, JA-III-1215-16, expressly incorporated, at ¶5, its Injunction Order, it also expressly limited that incorporated Injunction Order by stating that it "relates only to Joppatowne's breach of the Redner's Lease as regards All Fresh Quality Seafood and Produce and Lapp's Fresh Meats," i.e., the District Court's injunction went only to those matters relating to those two vendors that had been tried and decided by the District Court in its January 24, 2013, memorandum opinion, JA-I-540-80. The District Court, in that July 11, 2013, Order and Judgment (JA-III-1215-16.), did not retain

---

[5] See Declaration of Robert Fowler, ¶2, JA-III-1414, and Declaration of Brian Miller, ¶3 JA-III-1449-50.
[6] See Fowler Declaration at ¶2; JA-III-1414, Miller Declaration at ¶5, JA-III-1449-50; Declaration of Elmer Lapp at ¶3, JA-III-1455-56.

9

jurisdiction over matters arising out of the incorporated permanent injunction order, and, at ¶9, it ordered the Clerk to "CLOSE THIS CASE."  JA-III-1217.

Redner's contempt motion focused on events that Redner's alleged occurred in November of 2013, five months after the June 23, 2013, compliance date established by the Injunction Order. Redner's contended in its motion that its agents observed uncooked-food-sales activities at the Ruth's Grill vendor booth in the Amish Farmers' Market which Redner's asserted were at odds with the "butcher-shop" prohibition under the restrictive-use covenant as interpreted by Judge Legg in his January 24, 2013, memorandum opinion.  JA-I-540.

Joppatowne, in its December 19, 2013, Memorandum in Answer and Opposition to Redner's contempt motion, JA-III-1395-1514, placed before the District Court the facts relevant to the sales activities at the Ruth's Grill vendor booth after June 23, 2013, by way of appropriate evidentiary proffers by Joppatowne via declarations of Robert Fowler (Exhibit B), JA-III-1414-47, Brian Miller (Exhibit C), JA-III-1448-53, Elmer Lapp (Exhibit D), JA-III-1454-59, and Jerry A. Van Der Meulen (Exhibit E), JA-III-1460-1514.

After Lapp's Fresh Meats terminated its business operations at the Amish Farmers' Market as of June 23, 2013, Elmer Lapp, who was the owner of that business, retained a Pennsylvania lawyer, Michael Smoker, Esq. Mr. Smoker then contacted Joppatowne and JTF to determine if Mr. Lapp and his family could

10

return to JTF's flea market premises to conduct a new business activity.[7]   A meeting was held at Mr. Smoker's office in Leola, Pennsylvania, on July 16, 2013, that was attended in person by Mr. and Mrs. Lapp, Mr. Smoker, Joppatowne's representative, Robert Fowler, Esq., and its litigation counsel, Charles M. Kerr, Esq.   JTF attended the meeting by way of a telephone connection with JTF's owner, Brian Miller, and its attorney, Joel D. Seledee, Esq.   Arrangements were made to provide Mr. and Mrs. Lapp and their attorney, Mr. Smoker, on July 17, 2013, with copies of the pertinent District Court opinion and orders – the District Court's January 24, 2013, memorandum opinion, its June 13, 2013, memorandum opinion, and its July 11, 2013, memorandum opinion, order, and judgment. The Lapps and their attorney were advised by JTF to submit a business plan of their new proposed business operations, and they were told that JTF would require them to utilize a new business entity if they returned to do business as a vendor within the Amish Farmers' Market.   Joppatowne told both the Lapps and JTF that Joppatowne would require them to conform to the requirements set forth in the District Court's January 24, 2013, memorandum opinion if they returned to do business as a vendor in the Amish Farmers' Market.[8]

---

[7] Fowler Declaration, ¶3, JA-III-1416-17; Miller Declaration, ¶6, JA-III-1450-51; Lapp Declaration, ¶4, JA-III-1456-57.
[8]   Id.

11

On August 1, 2013, JTF permitted Mr. Lapp and his family to return to the Amish Farmers' Market to operate the Ruth's Grill restaurant business operations[9] that Judge Legg had held, in his January 24, 2013, opinion, JA-I-571, did not violate the restrictive-use covenant in Redner's lease with Joppatowne.  The Lapps operated that Ruth's Grill restaurant business from August 1, 2013, to December 7, 2013, when the Lapps terminated their business operations at the JTF flea market and vacated the vendor booth they had been using.[10]

After the Ruth's Grill restaurant business got underway in August, Elmer Lapp advised Joppatowne and JTF that he would like to begin selling, from the display case adjacent to the Ruth's Grill restaurant operation, prepared foods that he listed for Joppatowne and JTF to consider.[11]  After consulting with counsel for JTF and the Lapps, Joppatowne, on August 12, sent an e-mail to Redner's litigation counsel setting forth the uncooked food-for-sale items that Mr. Lapp had told JTF and Joppatowne he proposed to sell.  Redner's did not advise either Joppatowne or JTF that it objected to the proposed sale items.[12]  On September 12, 2013, Mr. Lapp added three additional items, which were being cooked for sale as

---

[9] Fowler Declaration, ¶4, JA-III-1417; Miller Declaration, ¶7, JA-III-1451-52; Lapp Declaration, ¶5, JA-III-1457-58.

[10] Fowler Declaration, ¶¶4 and 8, JA-III-1417-18, 1420; Miller Declaration, ¶¶7 and 8, JA-III-1451-52; Lapp Declaration, ¶¶5 and 6, JA-III-1457-58.

[11] Fowler Declaration, ¶4, JA-III-1417; Miller Declaration, ¶7, JA-III-1451-52; Lapp Declaration, ¶5, JA-III-1457-58.

[12] Fowler Declaration, ¶4, JA-III-1417; Miller Declaration, ¶7, JA-III-1451-52; Lapp Declaration, ¶5, JA-III-1457-58.

12

restaurant items in the Ruth's Grill restaurant operation, that he proposed to sell in uncooked, pre-packaged form from the display cases adjacent to the Ruth's Grill restaurant operation. Once again, Mr. Fowler, on behalf of Joppatowne, sent Render's attorney, John Miravich, Esq., a September 12, 2013, e-mail giving Redner's advance notice of these additional uncooked food-for-sale items. Again, no objection to these proposed additional sales items was made by Redner's in reply to Mr. Fowler's September 12 e-mail.[13] Consequently, on October 3, 2013, Elmer Lapp, trading as Ruth's Grill, began displaying those uncooked food-for-sale items in the display cases adjacent to the Ruth's Grill restaurant operation.[14]

Joppatowne had no knowledge of Redner's complaints about the Ruth's Grill vendor sales activities in the JTF premises until it received the November 25, 2013, letter of complaint that was attached as an exhibit to Redner's motion for contempt. JA-III-1362-63.[15] Upon receiving that letter from Redner's attorneys, Joppatowne sent it to counsel for JTF and the Lapps, asking them to respond to the factual allegations set forth in the Redner's letter of complaint.[16] Joppatowne, through its litigation attorney, told Redner's that it had alerted JTF and the Lapps to the complaint and that it would respond promptly. It asked Redner's to provide

---

[13] Id.

[14] Lapp Declaration ¶6, JA-III-1458.

[15] Fowler Declaration, ¶5, JA-III-1418.

[16] Fowler Declaration, ¶6, JA-III-1418-19; Miller Declaration, ¶8, JA-III-1452; Lapp Declaration, ¶6, JA-III-1458.

13

whatever additional factual materials it had relating to its complaint, and it invited Redner's to go with Joppatowne, JTF, and Ruth's Grill representatives to observe what was occurring so that Redner's concerns could be understood by all and its complaints resolved, or at least narrowed.[17]  Redner's declined, on November 26, 2013, to participate in such a meeting.  It did provide further evidentiary information regarding its complaint on November 26, 2013, and it demanded that Joppatowne agree, by noon on Friday, November 29, to a stipulation and proposed order admitting that it had engaged in contumacious conduct and agreeing to paying a fine of $10,000 to Redner's. [18] On Friday afternoon, November 30, 2013, Joppatowne sent an e-mail to Redner's advising that, because of the Thanksgiving holiday, it would not be able to further respond to Redner's about these matters until the following week.[19]  As set forth in the Miller Declaration, at ¶8, JA-III-1452, Mr. Miller went to the Ruth's Grill stall on November 27, 2013, and he observed no sales activities that were at variance with what Lapp had told Joppatowne and JTF he intended to sell by way of uncooked prepared food items to which Joppatowne had alerted Redner's through the August 12 and September

---

[17] See Ex. 4 to Fowler Declaration, JA-III-1430-33, and ¶6 of Fowler Declaration. JA-III-1418-19,

[18] See Doc. No. 193-8 to Redner's contempt motion, JA-III-1364, and Ex. 6 to Fowler Declaration, JA-III-1440-43.

[19] See Doc. No. 193-9 to Redner's contempt motion, JA-III-1366.

12 emails. Mr. Lapp, in his Declaration at ¶7, JA-III-1458-59, denied the sales allegations made in the declarations that Redner's attached to its contempt motion.

As stated in the Lapp Declaration at ¶6, JA-III-1458, the Lapps stopped selling uncooked food items at the Ruth's Grill vendor stall at the close of business on November 30, 2013. The Ruth's Grill restaurant operation was terminated by the Lapps at the close of business on Saturday, December 7, 2013.[20] Joppatowne, through its litigation attorney, hired a private investigator, Jerry A. Van Der Meulen, to inspect, and to report to Joppatowne about, the Ruth's Grill vendor stall within the Amish Farmers' Market enclosure at the JTF flea market premises. Mr. Van Der Meulen set forth his observations on December 12, 13, and 14, 2013, of the Ruth's Grill vendor stand in his Declaration that was Exhibit E to Joppatowne's answer and opposition to the motion for contempt. JA-III-1460-1514. Mr. Van Der Meulen confirmed that there was no current business activity of any kind in the Ruth's Grill vendor booth as of those dates. There was no evidence, or even the proffer of evidence, that any allegedly proscribed sales activities had occurred at the former Lapp's stall between early December, 2013, and the District Court's telephone hearing and contempt order on April 29, 2014.

---

[20] Lapp Declaration, ¶6, JA-III-1458.

15

## SUMMARY OF ARGUMENT

The District Court's Injunction Order required Joppatowne to do only one thing – "cause to be removed" from the Amish Farmer's Market All Fresh and Lapp's by no later than June 23, 2013, ten days after the date of the Injunction Order. The District Court issued this injunction based on another District Judge's finding, after a bench trial, that All Fresh was a "seafood shop" and Lapp's was a "butcher shop," and that both activities were precluded under the restrictive-use covenant in the Redner's/Joppatowne lease. Subsequent trial proceedings in the case, however, established that Redner's had suffered no provable damages from the two breaches found by the District Court, so that Redner's was awarded only $2.00 in nominal damages, after which the District Court directed the Clerk to close the case.

More than five months after the compliance date, Redner's filed its motion for contempt on December 2, 2013, and almost three months after the District Court entered final judgment awarding Redner's nominal damages of $2.00. There is no dispute that, as of June 23, 2013, neither Lapp's nor All Fresh operated at the location in question. Nor did Redner's take the position that some proscribed sales activity occurred at that location between June 23, 2013, and early October 2013. Instead, it argued that proscribed "butcher shop" activity commenced again in early October 2013 and continued until late November, 2013. Thus, Redner's

16

motion for contempt, in actuality, raised a new alleged breach of the restrictive-use covenant, based on activities that had never been the subject of a trial or evidentiary hearing to determine if they constituted a proscribed "butcher shop."

In the face of Redner's presentation of these new allegations as a purported contempt, the District Court failed to require Redner's to plead facts that would establish the District Court's subject-matter jurisdiction, including that the amount in controversy exceeded $75,000, and it also failed to require Redner's to plead facts sufficient to state a claim for civil indirect contempt, effectively denying Joppatowne's assertion of those defenses which Joppatowne made in its memorandum and answer to Redner's contempt motion. The District Court also failed to strike the limited factual proffers actually made by Redner's in its motion for contempt, including blatant hearsay not subject to any exception. The District Court then ruled summarily, without holding a trial or other evidentiary hearing: (i) that Joppatowne was in contempt of the Injunction Order because, according to the District Court, that Order precluded Joppatowne from failing to stop the sale of "uncooked food" at the Amish Farmer's Market location, where nothing in that Order precluded that activity, or prescribed anything at that location that occurred after the June 23, 2013, compliance date in the Injunction Order, so that, at best, the Injunction Order was ambiguous; and (ii) that Joppatowne, despite having placed before the District Court affidavits generating disputes of material fact on

the matters relevant to the Redner's motion, and despite Redner's failure to put before the District Court evidence that would have been admissible at trial, much less clear and convincing evidence, was not entitled to discovery or a trial on the Redner's contempt motion.   In each of these respects, the District Court erred, as explained below, and its contempt finding should be reversed.

## ARGUMENT

### I.    Standard of Review.

This Court reviews an order granting a motion for civil contempt for abuse of discretion, reviewing factual findings for clear error and legal conclusions de novo. Ashcraft v. Conoco, Inc., 218 F.3d 288, 301 (4th Cir. 2000).   "'No deference…is owed to the district court on conclusions of law, including the district court's understanding of controlling law or the various burdens of proof and presumptions; . . . such conclusions of law are reviewed de novo.'"   Everett v. Pitt County Bd. of Ed., 678 F.3d 281, 288 (4th Cir. 2012). (Internal citations omitted). Whether a district court denied a litigant due process is a legal question subject to de novo review on appeal. Thomas, Head & Greisen Employees Trust v. Buster, 95 F. 3d 1449, 1458 (9th Cir. 1996); accord, Federal Trade Commission v. H.G Kuykendall, 312 F. 3d 1329, 1333 (10th Cir. 2002).

18

**II.     The District Court Erred in Granting Redner's Motion for Contempt.**

    **A.     The District Court abused its discretion in failing to dismiss Redner's motion for contempt for lack of subject-matter jurisdiction because the amount in controversy did not exceed $75,000, as required under 28 U.S.C. §1332.**

"It is elementary that the burden is on the party asserting jurisdiction to demonstrate that jurisdiction does, in fact, exist." <u>McBurney v. Cuccinelli</u>, 616 F.3d 393, 408 (4th Cir. 2010) [citation omitted], <u>aff'd</u> <u>sub</u> <u>nom.</u> <u>McBurney v. Young</u>, ____U.S.___, 133 S.Ct. 1709 (2013). Thus, when "a defendant challenges the existence of subject matter jurisdiction in fact, the plaintiff bears the burden of proving the truth of such facts by a preponderance of the evidence." <u>United States ex rel. Vuyyuru v. Jadhav</u>, 555 F.3d 337, 347 (4th Cir.), <u>cert. denied</u>, 558 U.S. 875 (2009).

Redner's, as the party asserting that diversity subject-matter jurisdiction existed under 28 U.S.C. §1332 when it filed its amended complaint, had, and continues to have, the burden of proving the facts upon which diversity jurisdiction may be predicated, including the alleged fact that the amount in controversy in this case has a value that exceeds $75,000. Where, as in this case, the plaintiff that filed the case in federal district court does not allege a specific amount of damages, that plaintiff must prove, by a preponderance of the evidence, that the amount in controversy exceeds the jurisdictional minimum required by 28 U.S.C. §1332. <u>See</u>

19

<u>Momin v. Maggiemoo's International, LLC,</u> 205 F.Supp.2d 506, 509-10 (D.Md.2002)(Blake, J.) (where "a plaintiff's complaint does not allege a specific amount in damages" the proponent of jurisdiction must "prove by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional minimum.").

Here, Redner's was never put to its proof of the amount in controversy, despite Joppatowne's efforts to require it do so and to have the District Court address that jurisdictional issue. Redner's action, as pleaded in its amended complaint, JA-I-25-33, is a breach of lease/contract action in which Redner's sought damages, declaratory, and injunctive relief. With regard to this Court's subject-matter jurisdiction, Redner's, in ¶5 of the Amended Complaint, simply asserted that the District Court had subject-matter jurisdiction pursuant to 28 U.S.C. §1332 because "the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and the controversy is between citizens of different states." JA-I-26. In the breach-of-contract action pleaded in Count I of the amended complaint, Redner's said it was seeking damages in an unparticularized and unspecified amount "in excess of $75,000." Redner's did not plead any dollar value as the amount-in-controversy for Redner's declaratory-judgment claim in Count II, JA-I-30-32, nor was a dollar value pleaded by Redner's as to the amount-

in-controversy its claim for preliminary and permanent injunctive relief asserted as Count III of Redner's amended complaint. JA-I-32.

Joppatowne attempted throughout this litigation to have the District Court resolve the jurisdictional issues. In Joppatowne's answer to that amended complaint, Joppatowne pleaded, as its First Defense, that: "This Court lacks subject-matter jurisdiction over this action because the amount in controversy does not exceed $75,000 exclusive of interest and costs and Plaintiff has no good-faith basis for alleging in its amended complaint that the amount in controversy exceeds the $75,000 jurisdictional amount requirement of 28 U.S.C. §1332." JA-I-34.   In its November 1, 2011, motion in limine, filed before the first trial phase, it asked the District Court to preclude Redner's from introducing evidence at trial on the issue of whether it had a good-faith basis for alleging, in its complaint and amended complaint, that the amount in controversy exceeded $75,000, because of Redner's failures to answer Joppatowne's interrogatory no. 9 and its documents request no. 12 seeking discovery on that question. JA-I-43-44, 49, 52, 56-57.   The District Court never ruled on that motion.

In the first trial, before Judge Legg, the District Court found that Redner's had not proved lost-profit damages relating to the two breaches of the restrictive-use covenant by All Fresh and Lapp's Fresh Meats that the District Court determined, in its January 24, 2013, memorandum opinion, had occurred, and it

ordered a second trial to afford Redner's an opportunity to prove damages proximately caused by these two breaches and any additional vendor breaches found by the District Court at that second trial. JA-I-540, 557-58. Thereafter, the District Court, in its memorandum opinion of June 13, 2013, JA-II-680, in which it explained why it granted Redner's permanent-injunction motion, held that Redner's was not required to prove that it was incurring irreparable injury in order to obtain the permanent injunction it sought relating to All Fresh and Lapp's, so that the District Court failed to make any evaluation of the amount-in-controversy before it entered its permanent injunction order on June 13, 2013, JA-II-693, that required Joppatowne to remove All Fresh and Lapp's from the Amish Farmers' Market.

After the second trial phase occurred on July 1 and 2, 2013, the District Court found, in its July 11, 2013, memorandum opinion setting forth its second-trial findings of fact and conclusions of law, that Redner's had "failed to prove, as it must, that its lost profits were caused by Joppatowne's breach" and that Redner's "damages calculation was based on impermissible speculation and guesswork." JA-III-1212. The District Court held that Redner's "claim for lost profit damages fails," id. at 1213, and, at ¶5 of its July 11, 2013, Order and Judgment, the Court ordered and adjudged: "That the Plaintiff Redner's Markets, Inc., failed to prove lost profits relating to the infringing stalls All Fresh Quality Seafood and Produce

and Lapp's Fresh Meats and is therefore not entitled to lost profits damages." JA-III-1216. The District Court's Order and Judgment of July 11, 2013, established that no value attached to, or arose out of, the restrictive-use covenant breaches as to which the Court found Joppatowne responsible because of the sales activities of stall vendors All Fresh and Lapp's.

By its September 17, 2013, memorandum and order granting in part and denying in part Redner's motion to amend and for a new trial, the District Court concluded that Redner's was entitled to an award of nominal damages for these two breaches by All Fresh and Lapp's, and it valued those nominal damages at one dollar each, placing a total value on the amount-in-controversy in this case at $2.00. Obviously, that amount-in-controversy does not satisfy the "in excess of $75,000" prerequisite for diversity jurisdiction under 28 U.S.C. §1332, and, consequently, the factual basis upon which subject-matter jurisdiction was based in this case "dropped away."

The evaluation, weighing, and determinations a district court must make under these circumstances is set forth in Shanaghan v. Cahill, 58 F. 3d 106 (4th Cir. 1995). In that decision, the Fourth Circuit addressed a diversity case in which the plaintiff alleged that the defendant and his company owed her three debts that, together, had a value that exceeded the $50,000 jurisdictional amount in controversy then required for federal subject-matter jurisdiction under 28 U.S.C.

§1332. Defendants answered and conducted discovery, and they then moved for partial summary judgment as to one of the three debts. The district court granted that motion, which reduced the amount in controversy to an amount substantially less than the $50,000 jurisdictional amount-in-controversy sum then required for federal subject-matter jurisdiction to exist. The district court then dismissed the remainder of the case for lack of subject-matter jurisdiction because, according to the Fourth Circuit, the district court "apparently believed it had no discretion, but rather was faced with a mandatory obligation to dismiss the case in its entirety." 58 F. 3d at 109. The Fourth Circuit held that the district court erred because, in such circumstances, "federal courts generally have discretion to retain or dismiss state law claims when the federal basis for an action drops away." Id.

The Fourth Circuit went on to hold that, where it appears from the face of the complaint that the plaintiff has alleged claims that total more than the jurisdictional amount specified in §1332 but then some event subsequent to the complaint occurs, during the course of the litigation in the district court, the district court "must then decide in its discretion whether to retain jurisdiction over the remainder of the case." 58 F. 3d at 112. The Court set forth how a district court was to exercise its discretion where the amount-in-controversy had "dropped away" because of some decision by the trial court after a complaint was filed:

> In general, courts should weigh convenience and fairness to both parties, as well as the interests of judicial economy . . . . In particular,

it is important to consider whether the amount claimed in the complaint was made in good faith, or whether plaintiff was consciously relying on flimsy grounds to get into federal court. . . . Another critical equitable factor is the existence of any state limitations bar to refiling in state court . . . . Next, courts should account for the amount of time and energy that has already been expended, and decide whether it might be more efficient to simply retain jurisdiction . . . . Finally, other considerations may arise on a case-by-case basis, such as the existence of some significant issue of state law best resolved in state court,  that could inform the trial court's determination whether to keep or dismiss the case entirely. . . .

Id. Internal citations omitted. Since Shanaghan, both the Fourth Circuit and the District of Maryland have considered diversity cases where events post-complaint revealed that the amount-in-controversy requirement of 28 U.S.C. §1332 could not be met, and, as a result, those cases were dismissed for lack of subject-matter jurisdiction. See, e.g., Wiggins v. North American Equitable Life Assurance Co., 644 F. 2d 1014 (4th Cir. 1981); Planmatics, Inc. v. Showers, 137 F. Supp. 2d 616 (D. Md. 2001), aff'd, 30 Fed. Apx. 117 (4th Cir. 2002).

Here, the District Court appears not to have even considered the five factors specified in Shanaghan with reference to Redner's contempt motion, much less apply them correctly.  Had the District Court done so, it should have dismissed Redner's contempt motion. Redner's motion focused on events that occurred in the Amish Farmers' Market enclosure in November of 2013, some five months after the June 23, 2013, removal deadline set by the District Court in its June 13, 2013,

25

Injunction Order and where there was no dispute that there was no proscribed sales activity at the location in question from June 23, 2013, until, at a minimum, October 2, 2013. JA-III-1604. Elmer Lapp and his family vacated the JTF Amish Market enclosure by December 7, 2013. There is no conceivable set of circumstances that could warrant compensation to Redner's of any significant sum of money even if the District Court tried and determined the contested facts regarding what Mr. Lapp was selling when those sales occurred, and Mr. Lapp could be made a party to any action that Redner's elected to pursue against Joppatowne, JTF, or Mr. Lapp and his family, in Maryland's state courts, which do not have the diversity-jurisdiction restrictions that govern the federal courts. The events of which Redner's complains all occurred in November of 2013, so there are no statute of limitations issues that could prejudice Redner's, in a new state court breach of lease action, had the District Court dismissed the Redner's contempt motion for lack of subject-matter jurisdiction, as it should have done.

As to whether or not the amount claimed by Redner's in its complaint and amended complaint was made in good faith, what has occurred in this case precludes any such conclusion. Redner's is represented by competent counsel. They have made carefully-calculated decisions throughout this case to keep it in federal court. Redner's initially filed this case in the Eastern District of Pennsylvania where no good-faith basis existed for a colorable claim of personal

26

jurisdiction in Pennsylvania over Joppatowne. When Joppatowne challenged that Pennsylvania forum, the case came to the District of Maryland and resulted in an amended complaint, JA-I-25,  that took pains not to name the Pennsylvania Amish vendors as FRCP 19(c) potential parties, as that Rule required, and which would have resulted in destruction of diversity jurisdiction had those Amish vendors been added as defendants as Joppatowne has contended was required as a matter of due process.[21] Redner's stonewalled the discovery requests made by Joppatowne that would have required it to reveal its actual damages claims.[22] It then took the position that it had no obligation to prove that the alleged breaching acts caused it irreparable harm in order to obtain injunctive relief, but, at the same time, after Senior District Judge Legg's January 24, 2013, decision, when Redner's asked this Court to grant it a permanent injunction, Redner's told the Court that it was prepared to prove that it had suffered over $2.5 Million in damages attributable to Joppatowne's alleged breaches of the restrictive-use covenant. JA-I-589, 594. The moment of truth finally came on July 1 and 2, 2013, when Redner's revealed that it had no restrictive-use covenant breach claim against any vendor other than Beiler's Baked Goods and the previously adjudicated All Fresh and Lapp's vendors. Redner's lost the Beilers Baked Goods claim. Redner's could not prove any

---

[21]   These are all issues in the consolidated appeals previously filed and currently pending in this Court.

[22]   See Joppatowne motion in limine filed November 1, 2011, JA-I-41-59. The District Court never ruled upon that motion.

damages at all related to Lapp's and All Fresh. Had the District Court evaluated and balanced these factors, as <u>Shanaghan</u> requires, it should have dismissed Redner's motion for contempt for lack of diversity subject-matter jurisdiction.

For all of these reasons, Joppatowne asks that this Court reverse, for lack of subject-matter jurisdiction, the District Court's Order granting Redner's motion for contempt. In the alternative, Joppatowne asks that this case be remanded to the District Court with instructions that the District Court consider and apply the factors set forth in <u>Shanaghan</u>.

### B.   The District Court erred in granting Redner's motion for contempt because Joppatowne did not violate the Injunction Order.

The District Court's June 13, 2013, Injunction Order required Joppatowne to "cause All Fresh Quality Seafood & Produce and Lapp's Fresh Meats to be removed from the Amish Farmers' Market at Joppatowne Plaza Shopping Center within ten days." That 10-day period ran on June 23, 2013. There was no dispute of fact before the District Court, at the time it granted Redner's motion for contempt, that All Fresh had terminated its vendor-stall business in the flea market premises that Joppatowne leased to JTF, LLC, as of August 30, 2012,[23] or that Lapp's Fresh Meats terminated the operation of its vendor stall in the Amish Farmers' Market enclosure within the JTF flea market as of Sunday, June 23,

---

[23] <u>See</u> Declaration of Robert Fowler, ¶2, JA-III-1415, and Declaration of Brian Miller, ¶3, JA-III-1449 .

28

2013,[24] the compliance date set forth in the Injunction Order. That Injunction Order did not deal with potential future factual scenarios nor did it define or bar "butcher-shop" or "seafood-shop" scenarios that could give rise to a *future* claim by Redner's for breach by Joppatowne of the lease between Redner's and Joppatowne.[25] Neither the Injunction Order nor Judge Legg's January 24, 2012, Memorandum Opinion stated that sale of "uncooked foods" was a <u>per se</u> violation of the restrictive-use covenant.

Despite the plain language of the Injunction Order compelling Joppatowne only to "cause All Fresh Quality Seafood & Produce and Lapp's Fresh Meats to be removed from the Amish Farmers' Market" within ten days, by June 23, 2013, and despite the undisputed facts demonstrating that both of those stall holders terminated their operations at the Amish Farmers Market on or before that court-imposed deadline, the District Court found that Joppatowne was in contempt of the Permanent Injunction Order. The District Court expressly rejected Joppatowne's position that the mere sale of "uncooked food" was not the equivalent of a prescribed "butcher shop" operation, even under Judge Legg's January 24, 2013,

---

[24] <u>See</u> Fowler Declaration, ¶2, JA-III-1415; Miller Declaration, ¶5, JA-III-1450; Declaration of Elmer Lapp, ¶3, JA-III-1456 .

[25] As explained herein, at page 39, the allegations in Redner's motion for contempt could properly have been raised only in a new complaint for breach of lease which, because the federal courts would not have had subject-matter jurisdiction over those claims, Redner's would have to pursue in State court.

29

finding that Lapp's was operating a "butcher shop" at that time. JA-III-558, 568, 570-71. Judge Bennett, during the telephone hearing on Redner's motion for contempt, concluded that, if uncooked food items were sold at the Lapp's location, then those operations equaled a "butcher shop," apparently as a matter of law, stating that the District Court was "not going to have a trial on whether uncooked food items amount to operating a butcher shop, Mr. Kerr." JA-III-1612.

The District Court erred in that regard. The plain language of the Injunction Order required only that Joppatowne "cause the removal," before June 23, 2013, of All Fresh and Lapp's from the Amish Farmer's Market, which Joppatown did. That Injunction Order did not enjoin the future operation of even a butcher shop at that location, but, to the extent it did, the District Court's equation, as a matter of law, of the sale of uncooked food items with operation of a "butcher shop," was error, as was its grant of Redner's motion for contempt on that basis.

Even if the District Court construed the Injunction Order as prohibiting Joppatowne from allowing its tenant, JTF, to license stall operations at the Farmer's Market, after June 23, 2013, that would constitute a "butcher shop" under the restrictive-use covenant, based on the plain language of the Injunction Order, the District Court erred in holding Joppatowne in contempt of that Order for new sales activities first occurring months after June 23, 2013. A district court cannot

properly hold a person in indirect civil contempt for violating a court order unless

that order is clear and unambiguous as to what was commanded or precluded.

> To hold [a person] in civil contempt, the district court must be able to point to a decree from the court which sets forth in specific detail an unequivocal command which the party in contempt violated.

Ashcraft, 218 F. 3d at 301. [Internal quotations omitted].  Accord, Federal National

Mortgage Association v. Bell, _____ Fed. Appx. _____, 2014 WL 2809008 *1

(4th Cir. 06/23/2014) (per curium).

Here, not only did the Injunction Order fail to specify that future conduct

was proscribed, the District Court, itself, at the commencement of the July 1, 2013,

trial day, after the Injunction Order had been issued and after Joppatowne had

complied with it, considered a request by Redner's counsel that the Injunction

Order be amended to proscribe conduct in the future that had not yet occurred. JA-

II-694, 700.  The District Court declined to do so, explaining, on the record, that:

"I'm not really inclined to have injunctive relief as to a prospective conduct."  JA-

II-701.  Given the finite language of the Injunction Order, and the District Court's

own  interpretation of that Order as not applying to "prospective conduct," that

Injunction Order was, at best, ambiguous, and the District Court erred in

concluding that sales activities at the Amish Farmer's Market that first occurred

months after June 23, 2013, compliance date in that Injunction Order were in

contempt of that Order.

**C.    The District Court erred in summarily granting
Redner's contempt motion without holding a trial
or other evidentiary hearing and without affording
Joppatowne discovery on Redner's allegations.**

Because the purported contumacious conduct about which Redner's complained was alleged to have been committed at the Amish Farmer's Market, outside the presence of the District Court, the contempt order at issue in this appeal was for indirect civil contempt. International Union of United Mine Workers of America v Bagwell, 512 U.S. 821, 827 n. 2 (1994) (indirect contempts are those occurring out of court); United States v. Neal, 101 F. 3d 993, 997 (4th Cir. 1996 ) ("Indirect, or out-of-court, contempt does not occur within the presence of the court . . . ."). Indirect civil contempt may not be imposed by summary adjudication. Bagwell, 512 U.S. at 833. Although a finding of indirect civil contempt does not generally require, to satisfy due process, the full panoply of rights required before criminal contempt may be levied, "[a]lleged contempts committed beyond the court's presence where the judge has no personal knowledge of the material facts are especially suited for trial by jury. A hearing must be held, witnesses must be called, and evidence taken in any event. And often . . . crucial facts are in close dispute." Green v. United States, 356 U.S. 165, 217 n. 3 (1958) (Black, J., dissenting), quoted with approval in Bagwell, 512 U.S. at 834.

The reasons that due process requires these protections in cases of civil indirect contempt were cogently set forth by the Supreme Court in <u>Bagwell</u>, which noted that, because district judges have an inherent contempt authority, this power "also uniquely is liable to abuse," so that:

> Unlike most areas of law, where a legislature defines both the sanctionable conduct and the penalty to be imposed, civil contempt proceedings leave the offended judge solely responsible for identifying, prosecuting, adjudicating, and sanctioning the contumacious conduct.
>
> * * *
>
> Our jurisprudence in the contempt area has attempted to balance the competing concerns of necessity and potential arbitrariness by allowing a relatively unencumbered contempt power when its exercise is most essential, and requiring progressively greater procedural protections when other considerations come into play. . . .Thus, petty, direct contempts in the presence of the court traditionally have been subject to summary adjudication, to maintain order in the courtroom and the integrity of the trial process in the face of "an actual obstruction of justice. . . . .  Summary adjudication becomes less justifiable once a court leaves the realm of immediately sanctionable petty direct contempts.  If a court delays punishing a direct contempt until the completion of trial, for example, due process requires that the contemnor's rights to notice and a hearing be respected.
>
> * * *
>
> Still further procedural protections are afforded for contempts occurring out of court, where the considerations justifying expedited procedures do not pertain.

<u>Bagwell</u>, 512 U.S. at 832-33.[Internal citations omitted].

Thus, as <u>Bagwell</u> explained, a trial or evidentiary hearing is generally required for a finding of indirect civil contempt unless the contempt proceeding is

one "involving discrete, readily ascertainable acts, such a turning over a key or payment of a judgment . . . since the need for extensive, impartial factfinding is less pressing." Bagwell, 512 U.S. at 833.   Similarly, a court cannot enter a finding of indirect civil contempt except on a finding that the moving party has demonstrated such contempt by clear and convincing evidence. Ashcraft v. Conoco, Incorporated, 218 F. 3d 288, 301 (4th Cir. 2000).

In this case, the District Court failed to follow these precepts, from beginning to end. This is not a matter involving whether Joppatowne "turned over a key" or made a required payment, as to which the District Court was not required to engage in fact finding based on clear and convincing evidence.[26] At a minimum, where the underlying facts are in dispute, a district court must resolve those disputed facts by a trial or evidentiary hearing and, at least implicitly, after the alleged contemnor has had an opportunity for discovery on the facts alleged by the moving party.

Even had Redner's factual assertions been supported by evidence admissible at trial or the equivalent, which they were not, as addressed in Section II.E, Joppatowne disputed all material facts proffered by Redner's, by affidavit or the equivalent of evidentiary facts that would be admissible at trial. Those facts are

---

[26]   Indeed, it is Joppatowne's position that the Permanent Injunction Order was clear as to what it **was** required to do by June 23, 2013:  "cause to be removed" Lapp's Fresh Meats and All Fresh.  There is no dispute that Joppatowne did so, and that should have ended the matter.

detailed in the Statement of Facts at pages 10-15.   Where, as in this case, facts upon which a civil contempt claim is predicated are in dispute, a trial court must afford to the parties to the claim the litigation requirements of due process of law. See 11A C. Wright, A. Miller, and M. Kane, supra §429 at p. 429 n. 48 and accompanying text, and cases cited and discussed above.

Redner's contempt allegations in its motion were fact-driven, as were Joppatowne's substantive non-legal defenses. Joppatowne asked the District Court, should it deny Joppatowne's motion to dismiss Redner's motion for contempt on the multiple other grounds raised, to afford Joppatowne discovery by way of interrogatories, document production, and depositions, and to set in a trial or other evidentiary hearing, at the close of such discovery, so that the District Court could make factual findings and legal conclusions based on evidence at trial that met the evidentiary standards that Federal Rule of Evidence 1101(b) makes applicable to contempt proceedings.[27] JA-1409. The District Court denied Joppatowne's motion to dismiss in its entirety, including Joppatowne's request for discovery and a trial or evidentiary hearing on Redner's contempt allegations and Joppatowne's defenses, instead granting Redner's motion for contempt summarily.   The District Court erred in that regard.

---

[27] Joppatowne also asked that, in such a trial, it be afforded the opportunity to present opening and closing arguments.

**D.    The District Court erred in not dismissing Redner's motion for contempt for failing to comply with pleading requirements for such motions.**

**1.    Redner's violated FRCP 8's requirement that the grounds for subject-matter jurisdiction must be pleaded.**

In order to invoke the power of a United States District Court to punish the disobedience of one of its orders as a contempt, the proceeding must be initiated by a document filed by the party seeking to invoke the Court's contempt powers that, by analogy to FRCP 8, contains a short and plain statement of the grounds upon which the Court's subject-matter jurisdiction depends. See 11A C. Wright, A. Miller, and M. Kane, Federal Practice and Procedure: Civil § 2960 at p. 427 n. 37 and accompanying text (2013). There was no statement of any kind in the Redner's motion that pleaded the grounds upon which Redner's asserted that the District Court had subject-matter jurisdiction over the Redner's contempt complaint, and, for that reason, the Redner's motion failed to state a cognizable contempt claim,[28] and the District Court should have dismissed it.

To the extent that Redner's and the District Court were relying on FRCP 8(a)(1)'s provision that a pleading that states a claim for relief need not contain a

---

[28] See, e.g., Joy Family Ltd. Partnership v. United Financial Banking Companies, Inc., 2013 WL 4647321 (D. Md. 2013) (Where plaintiff, asserting that the District Court has diversity-subject-matter jurisdiction over the plaintiff's pleaded cause of action, fails to plead, and is unable to plead, facts to establish that subject-matter jurisdiction, the Court will dismiss plaintiff's action for lack of subject-matter jurisdiction.).

36

short and plain statement of the asserted grounds for the court's subject-matter jurisdiction where "the court already has jurisdiction and the claim needs no new jurisdictional support," that reliance was misplaced. The District Court did not, in its July 11, 2013, Order and Judgment (Doc. No. 180), retain jurisdiction over the permanent injunction nor did that injunction have any executory aspect as of July 11, 2013. Instead, this District Court closed this case, thereby terminating it and the Court's jurisdiction over it, once the District Court entered, on September 17, 2013, its memorandum and order (Doc. No. 188) deciding Redner's motion to amend and for a new trial.

### 2. Redner's failed to allege sufficient facts to show entitlement to contempt.

In addition, again by analogy to FRCP 8, Redner's contempt "motion" was required to show on its face that facts exist which Redner's was prepared to prove that would be sufficient to establish that Joppatowne engaged in conduct, proscribed by the District Court's Injunction Order, that constitutes contempt. See 11A C. Wright, A. Miller, and M. Kane, supra at p. 427. That showing must also take into account the fact that, in a civil contempt proceeding, proof of the contempt charged by the advocating party must be by clear and convincing evidence. See id. at p. 430 n. 55 and accompanying text. Furthermore, the court considering the civil contempt claim must find that the order that the alleged contemnor is accused of violating is clear and unambiguous and that the alleged

contemnor had notice of the order and did not diligently attempt, in a reasonable manner, to comply with that order. See id. at pp. 430-31 n. 56 and accompanying text. Applying these pleading and proof principles to Redner's contempt motion, Redner's motion did not, on its face, show that facts existed which established that Joppatowne had engaged in contumacious conduct proscribed by the Court's permanent injunction and did not diligently attempt, in a reasonable manner, to comply.

As set forth above, the conduct proscribed by the permanent injunction was a failure by Joppatowne to "cause the removal" from the JTF flea market premises of All Fresh and/or Lapp's Fresh Meats by June 23, 2013. Redner's does not, and indeed it could not, allege or prove that All Fresh and/or Lapp's Fresh Meats remained in the JTF flea market premises after June 23, 2013. Consequently, on its face, Redner's contempt motion did not plead the existence of facts that, if true, were sufficient to establish by clear and convincing evidence that Joppatowne had engaged in contumacious conduct that was proscribed by the Court's Injunction order.

As explained below in Section II.E, the facts alleged by Redner's were grounded, for the most part, in inadmissible proffers of hearsay that, per Joppatowne's December 16, 2013, motion to strike, JA-III-1369-89, should not have been considered by the District Court in deciding Redner's contempt motion

38

and, if not considered, would have left the District Court with no basis for its contempt decision. In any event, the facts that Redner's did assert go to events and actions at the Ruth's Grill vendor stall operated by Elmer Lapp and his family that purportedly occurred in November, 2013, approximately five months after the June 23, 2013, compliance deadline specified in the District Court's Permanent Injunction Order. At most, those alleged events and actions plead a new, and different, claimed breach by Joppatowne of the Redner's restrictive-use covenant in Redner's lease with Joppatowne, none of which are addressed in, or proscribed by, the District Court's  Injunction Order. For Redner's to pursue these new claims of breach would require the filing, by Redner's, of a new complaint that complied with the Federal Rules of Civil Procedure and pleaded a viable basis for the District Court to conclude that it had subject-matter jurisdiction over such a new complaint. Redner's contempt motion is not such a new complaint, it does not satisfy the pleading requirements of FRCP 8(a)(2), and the District Court erred by not dismissing and/or denying it on that basis.

### 3.    Redner's failed to comply with FRCP 19's pleading requirements.

The District Court also erred in failing to grant Joppatowne's motion to dismiss for lack of subject-matter jurisdiction under FRCP 19. Non-party Elmer Lapp is a FRCP 19 indispensable party who was required to be identified as such by Redner's, per FRCP 19(c), in Redner's "pleading" that set forth its contempt

claim against Joppatowne and as to whom joinder is not feasible, applying the equitable standards of FRCP 19(b), because such joinder of Elmer Lapp, a Pennsylvania resident, as a defendant would destroy this Court's diversity subject-matter jurisdiction given that Redner's is a Pennsylvania corporation having its principal place of business in Pennsylvania.

Based upon the facts that were in evidence during the first trial phase in this case, Joppatowne moved to dismiss, pursuant to FRCP 12(h)(2),[29] based on FRCP 19(b)(2), all aspects of the case that directly affected non-parties JTF and the JTF vendors (including Elmer Lapp and Lapp's Fresh Meats, LLC) that Redner's contended should be barred from operating in the JTF farmers' market. Joppatowne asked for a ruling that JTF and these vendors, other than the "Amish vendors," were FRCP 19(a) "required parties to be joined," joinder of which is mandatory, per FRCP 19(a)(2), and that the Amish vendors (including Elmer Lapp and Lapp's Fresh Meats, LLC), all of whom are Pennsylvania residents, were FRCP 19(b) indispensable parties as to whom joinder was not feasible, since bringing them into this case would deprive the District Court of diversity subject-matter jurisdiction because there would no longer be complete diversity  between

---

[29] See generally 5C C. Wright and A. Miller, Federal Practice and Procedure: Civil 3d § 1392 (2004).

plaintiff and all defendants.[30] Had the District Court granted that motion, as it should have, Redner's claim for breach of the restrictive-use covenant from the operations of Lapp and All Fresh would no longer have been part of this case, nor would there have been any finding that the sales activities of Lapp and All Fresh were in breach of that restrictive-use covenant. Ipso facto, therefore, there would have been no Injunction Order based on those breaches and, hence, no way for Redner's to allege that Joppatowne be held in contempt for violating that Order.[31]

Redner's original and amended complaints alleged that Joppatowne violated the "restrictive use covenant" in the Lease by permitting another unnamed tenant at the Shopping Center to operate a farmers' market and that the unnamed tenants' farmers' market vendor's sales activity in the Shopping Center constituted a "grocery store/ supermarket" sales activity. JA-I-25-33. The consequence to the unnamed other tenant and its unidentified farmers' market vendors if Redner's was successful with its complaint, however, was readily apparent – Joppatowne, as landlord, would be required to order the tenant to close down the farmers' market sales activity and to put that tenant's vendors out of business. Redner's successful

---

[30] "If the joinder of the absentee could destroy diversity and the court 'in equity and good conscience' cannot proceed without the absentee, the action will have to be dismissed." 7 C. Wright, A. Miller, and M. Kane, Federal Practice and Procedure: Civil 3d § 1610 at 145-146 (2001).

[31] See Defendant's FRCP 12(b)(2) motion to dismiss and accompanying memorandum filed August 31, 2013, JA-I-305-393, and Transcript of September 12, 2012, motions hearing, at pp. 1-60, 82-91, JA-I-433-60, 514-23.

contempt motion had the same consequence for JTF and Lapp. JTF's ability to utilize this vendor stall within the premises it rents from Joppatowne was directly affected by the District Court's decision on Redner's contempt motion. Lapp has already been affected – he had to terminate his business at the JTF Farmers Market - and he and any like vendors who operate stalls at that Market will have to weigh the consequences to them imposed by the District Court's contempt ruling.

Redner's failure to plead in its contempt motion the facts that FRCP 19(c) requires should have resulted in dismissal of that motion by the District Court. See 7 C. Wright, A. Miller, and M. Kane, Federal Practice and Procedure: Civil 3d § 1625 at pp. 384-85 nn. 8 and 10 and accompanying text (2001).  Joppatowne asks this Court to hold that JTF is a FRCP 19(a) required party and that Lapp is a FRCP19(b) indispensable party as to whom joinder is not feasible because such joinder would defeat the complete diversity that 28 U.S.C. §1332 requires, and that the District Court erred in not dismissing or denying Redner's contempt motion on this basis.

### E. The District Court erred in considering, and in not striking, evidentiary proffers by Redner's that did not comply with the requirements of Federal Rule of Evidence 1101(b).

Per Federal Rule of Evidence 101, those Rules apply to "proceedings in the United States courts," including a "civil action or proceeding." Federal Rule of Evidence 101(b) (1).  Federal Rule of Evidence 1101(b) goes further, expressly

mandating that the Rules of Evidence apply to "contempt proceedings, except those in which the court may act summarily."[32]    Thus, as with motions for summary judgment under Federal Rule of Civil Procedure 56(c)(4), an affidavit or declaration relied upon to support an asserted fact in a contempt proceeding must, among other things, set out facts that would be admissible in evidence at trial. U.S. Department of Housing and Urban Development v. Cost Control Marketing & Sales Management of Virginia, Inc., 64 F. 3d 920, 926 (4th Cir. 1995), cert. denied, 517 U.S. 1187 (1996); The Maryland Highway Contractors Association, Inc. v. Maryland, 933 F. 2d 1246, 1251-52 (4th Cir.), cert. denied, 502 U.S. 939 (1991). Similarly, one may not simply submit unauthenticated documents, including photographs, in support of a proffered fact without proper authentication under oath or the equivalent.  Orsi v. Kirkwood, 999 F. 2d 86, 91-92 (4th Cir. 1993). For these reasons, a trial court should not consider affidavits or the equivalent to the extent they contain hearsay statements not within any recognized exception to the hearsay rule. Evans v. Technologies Applications & Serv. Co., 80 F. 3d 954, 962 (4th Cir. 1996). A trial court should also refuse to consider documents not

---

[32] The contempt proceeding before the District Court is not one in which it could act summarily. U.S. v. Neal, 101 F. 3d 993, 997 n.2 (4th Cir. 1996) (only contempt committed in the presence of court may be handled summarily. All other alleged contempts require notice and an opportunity to be heard); Federal Rule of Criminal Procedure 42(a).  Despite this, the District Court ruled summarily in granting Redner's motion for contempt, thereby committing error, as discussed, supra, in Section II.C.

43

authenticated in accordance with Federal Rule of Evidence 901, <u>Orsi, supra</u>, 999 F. 2d at 92, nor should it accept factual conclusions that are not supported by a proper foundation.  <u>See</u> <u>Mostofi v. Network Capital Funding Corp.</u>, 798 F. Supp. 2d 52, 55 (D.D.C. 2011) (facts proffered in a challenge to the amount in controversy requirement must be the equivalent of admissible evidence); <u>Salvaggio v. Safeco Property & Casualty Insurance Companies</u>, 458 F. Supp. 2d 283, 288 n. 3 (E.D. La. 2006) (Rule 56 standards applicable to facts proffered and documents submitted in support of motion to remand). Adherence to these principles is even more critical in a civil contempt proceeding because the party seeking to have the court impose a civil contempt must show entitlement to that relief by clear and convincing evidence. <u>In re: General Motors Corp.</u>, 61 F. 3d 256, 258 (4th Cir. 1995).

As explained below, Joppatowne submits that the District Court erred in failing to strike and in considering factual proffers relied upon by Redner's when it decided Redner's motion for contempt because those factual proffers violate these principles and the applicable Federal Rules of Evidence.

1.    **The purported oral communications recited in each of the Declarations between Redner's investigators and "employees" of "Lapp's" are hearsay and should have been struck by the District Court.**

Each of the three Declarations relied upon by Redner's for its motion for contempt recited what purported to be the substance of oral discussions between Redner's investigators and what each describes as "employees" of "Lapp's."[33] For example, the Declaration of Joshua Scott, Exhibit A to Redner's memorandum in support of its contempt motion  recites, at ¶¶10, 11, and 14, JA-III-1308, a purported conversation between Scott and an unidentified man, referred to by Scott as an "employee" at the location in question, regarding Scott's pre-textual request for a steak to be cut and this "employee's" supposed change in his alleged prior agreement to do so, citing "the lawsuit with Redner's," after this "employee" observed Scott taking photographs.  Similarly, Ryan Christman, in the Declaration that is Exhibit B, recites, at ¶8, JA-III-1310, a conversation he supposedly had, on the afternoon of November 16, 2013, with an unidentified male "employee" about whether "he had strip steaks, and he responded that they had frozen Delmonico and T-bone steaks."  Christman also recites, at ¶5 of his Declaration, JA-III-1309, a

---

[33] As discussed below, at pages 47-49, none of the Declarations lay any foundation for the conclusory assertion that these individuals were "employees" of anyone, much less of Lapp's.  Even if such a foundation had been laid, however, these purported statements were, nonetheless, hearsay not within any exception to Federal Rule of Evidence 802.

purported conversation he had earlier on November 16, 2013, with Joshua Scott, who told Christman what he, Scott, had supposedly observed "across the top of the counter of the butcher shop earlier on November 16, 2013." Finally, Sean Gordon, in his Declaration that is part of Exhibit D, makes averments at ¶¶10 and 11, JA-III-1325, about his supposed conversation on November 21, 2013, with an unidentified female "employee," including her purported statements about Redner's lawsuit, and he makes averments, at ¶¶17 and 18, JA-III-1326, about his supposed separate conversations on November 22, 2013, with "employees," and with another "employee," none of whom are even identified by gender, about where certain items for sale had been prepared.

All of these supposed oral communications are hearsay, as defined by Federal Rule of Evidence Rule 801(c), and they are inadmissible, as per Rule 802. In each instance, these supposed oral out-of-court statements are being offered by Redner's to prove the truth of the matters asserted in those statements, and none of these out-of-court statements fall within any of the exceptions to the hearsay rule.[34]

---

[34]     Joppatowne assumes that whoever drafted the Declarations for execution by Gordon, Christman, and Scott referred to the various unidentified individuals at the Farmer's Market as "employees" in hopes of having these hearsay statements be considered as admissions by a party opponent. Even if a foundation had been laid in the Declarations sufficient to support a finding that these individuals were both "employees" of, and also authorized to speak on behalf of, what Redner's asserts is Lapp's Fresh Meats, as required under Rule 801(d)(2)(C) and (D), these out-of-court statements would not be admissions of a party opponent under Rule 801(d)(2). Neither Lapp's Fresh Meats, nor    [footnote continued on next page]

Accordingly, the averments in ¶¶10, 11, and 14 of the Scott Declaration, Exhibit A to Redner's motion, the averments in ¶¶5 and 8 of the Christman Declaration, Exhibit B to Redner's motion, and the averments in ¶¶10, 11, 17 and 18 of the Gordon Declaration, part of Exhibit D to Redner's motion, should have been struck and should not have been considered by the District Court in deciding Redner's motion for contempt and for sanctions.

### 2. Redner's failed to lay a foundation for the assertions in the Declarations that the unidentified individuals mentioned in those Declarations were "employees."

In each of the three Declarations filed by Redner's with its motion, declarants Gordon, Christman, and Scott repeatedly reference their supposed oral communications with unidentified individuals they each refer to as "employees," as detailed in the immediately preceding section. Those Declarations, however, failed to lay a foundation for that "employee" characterization of their legal status. As explained in the preceding section, there was no basis on which the District Court could properly consider the statements of these alleged "employees" in deciding Redner's motion because those purported statements are pure hearsay. Even if one were to assume that whatever person, entity, or association was operating in the former Lapp's Fresh Meats space on the November 2013 dates

---

[footnote 34, continued]   any person, entity, or association Redner's alleges was operating in Lapp's former location, was, or is, a party to this case.

specified in the Declarations was an "opposing party" for purposes of Rule of Evidence 801(d)(2), which is not the case, the oral statements in question are still inadmissible, and the District Court erred in considering them and in failing to strike them.

Under Federal Rule of Evidence 801(d)(2)(C), a statement by an individual will be admissible against his or her alleged employer or principal only if that person had "authority" to speak on the matter that is the subject of the person's statements. Obviously, this necessarily requires a showing by the offering party, Redner's here, that the person making the purported statement was actually an agent or employee of the party against whom the statement is being used. Similarly, under Rule 801(d)(2)(D), even if the person making the out-of-court statement is an employee or agent of the party against whom the statement is being used, the party attempting to rely on the statement must show that the statement concerned a matter within the scope of that individual's employment/agency, made during the course of the employment/agency relationship. See generally Precision Piping and Instruments, Inc., 951 F. 2d 613 (4th Cir. 1991); Parker v. Danzig, 181 F. Supp. 2d 584, 592 (E.D. Va. 2001) ("the proponent for admission must produce independent evidence showing that the scope of the declarant's authority included the matters discussed in the alleged conversations"); accord Champ v. Calhoun County Emergency Management Agency, 226 Fed. Appx. 908, 912 n. 4 (11th Cir.

48

2007) (merely identifying an individual as an "employee" is not a sufficient foundation for admission of that person's statement as non-hearsay).

Thus, even if the entity, person, or association that Redner's asserted was operating in the former Lapp's Fresh Meats space on the specified November 2013 dates was an "opposing party," as required for Rule 801(d)(2) to apply at all, Redner's failed to satisfy the remaining requirements of Rule 801(d)(2). The District Court should have struck and not considered all of the purported conversations between Redner's investigators with persons they described as "employees" recited in the Declarations relied upon by Redner's. The District Court's failure to strike this hearing was reversible error. Without these hearsay proffers, there would have been no basis for the District Court's conclusion that Redner's had put forward evidence that showed the "cutting, grinding, and selling of fresh and frozen meat," JA-III-1626, much less clear and convincing evidence of such activity.

>    **3.    This District Court erred in failing to strike and/or
>            disregard the unsupported and/or improperly
>            supported factual assertions made by Redner's in its
>            memorandum in support of its motion for contempt.**

Redner's, in its memorandum in support of its motion for contempt, made various assertions of fact, some of which did not even purport to rely on either the Declarations or the photographs attached as Exhibits to Redner's motion for

contempt and the rest of which purported to be supported by unspecified assertions in the Declarations. Factual assertions or representations in a motion or memorandum must, themselves, be supported by evidence that would be admissible at trial, either by affidavit or the equivalent of testimony under penalties of perjury, or by documents that are properly authenticated and are otherwise admissible. James v. GMAC Mortgage, LLC, 772 F. Supp. 2d 307, 328 (D. Me. 2011); Renta v. County of Cook, 735 F. Supp. 2d 957, 964 (N.D. Ill. 2010); Blank v. Bethlehem Steel Corp., 758 F. Supp. 697 n. 1 (M.D. Fla. 1990). Because the purported support for those factual assertions in the Redner's memorandum in support of its motion for contempt is, itself, not the equivalent of admissible evidence, the District Court should have struck and/or disregarded those factual assertions. Schultz v. Kelly, 188 F. Supp. 2d 38, 53 n. 14 (D. Mass. 2002) (once affidavits on which party relied to support its factual assertion were struck, those assertions in the motion and memorandum had to be disregarded in ruling on the motion).

Redner's made factual assertions in its memorandum which it purported to support with the inadmissible hearsay in the Declarations of Gordon, Christman, and Scott, detailed above at pages 42-47, and with the copies of the enlarged

photographs that are in Exhibit C to the Redner's memorandum, and Exhibits 1, 2, and 3 to the Gordon Declaration that is Exhibit D to Redner's memorandum.[35]

On pages 2, 6, and 7 of its memorandum, for example, Redner's made factual assertions which are purportedly supported by the photographs and/or the Declarations, including, to wit: (i)  that "Redner's employees visited the Butcher Shop on Saturday, November 16, 2013, and discovered that it is identical to Lapp's in every way;" and  (ii)  that "employees in butcher's aprons [were] cutting raw

---

[35]  When originally filed, the various photographs attached to the Declarations were not authenticated in any way by anyone.  After Joppatowne filed its motion to strike on that basis, Redner's submitted new Declarations that partially authenticated them as being taken on the dates asserted and fairly and accurately showing what was there on those dates. Redner's, however, provided no information on the medium and manner the photographs were taken, i.e., whether by digital camera, cell phone, still shots from video, etc., despite that issue having been raised by Joppatowne in its motion, and District Judge Paul Grimm's opinion in Lorraine v. Markel American Insurance Company, 241 F.R.D. 534 (D. Md. 2007), dealing with the authentication requirements under those circumstances. Furthermore, there is a strong inference that the photographs that are attached to Sean Gordon's original Declaration may have been enhanced in some manner. Although Christman and Scott, in their Supplemental Declarations, assert that the photographs that are Exhibit C are "true, exact, **and unenhanced** copies of the Photographs," JA-III-1534-35, 1537-38, there is no such assertion by Gordon regarding the photographs he purported to authenticate.  Instead, he asserted only that they are "true, correct, and accurate depictions of the the [sic] Joppatowne Farmer's Market adjacent to Redner's Joppatowne grocery store on November 21, 22, 23, and 30, 2013." JA-III-1532.  Although the District Court's failure to strike the photographs was error, as was its failure to allow Joppatowne discovery, including on the photographs, the District Court's fundamental error was relying on these photographs as sufficient clear and convincing evidence to find Joppatowne in violation of the Permanent Injunction Order, particularly in the face of disputed facts.

meat with butcher's knives, [were] offering to cut specialized beef cuts for customers . . . and explaining their attempts to avoid the June 13, 2013 Order."

Redner's did not specify, in its memorandum, which particular photographs it contended provided the evidentiary proffer for any particular fact asserted in the memorandum, nor did it point to any particular paragraph(s) or statement(s) in any particular Declaration it contended provides such support. To the extent that Redner's was relying on the supposed hearsay communications between its "investigators" and the purported "employees," as recited in the Declarations, to support any of the facts asserted on pages 2, 6, or 7 of the memorandum, because those hearsay statements are not admissible, and because no foundation has been made for the characterization as "employees" of the individuals purportedly working on the four November 2013 dates addressed in the Declarations, the District Court should have struck those factual assertions and disregarded them in deciding Redner's motion for contempt.[36]

---

[36] To the extent that Redner's is relying on statements in the Declarations about oral communications with "employees" at the site on the November 2013 dates in question, those statements do not support those factual assertions in the memorandum because they are inadmissible hearsay. Because Redner's references to its Exhibits were not specific as to what, in a particular Declaration, or which particular photograph(s), Redner's asserted provided the evidentiary support for a particular factual assertion in its memorandum, it is often difficult to discern precisely what purported evidence Redner's was averring it had provided to support those factual assertions.

Had the District Court struck the improperly-supported factual assertions made by Redner's in support of its motion for contempt, as it should have done, it could not have reached the conclusion that Redner's had proven its entitlement to an order of contempt by clear and convincing evidence, as Redner's was required to do, even in the absence of the countering affidavits put forward by Joppatowne. The District Court's decision to deny Joppatowne's motion to strike was error, and the District Court's ruling should be reversed.

## CONCLUSION

For the reasons set forth above, Joppatowne respectfully requests that this Court reverse the decision of the District Court granting Redner's motion for contempt and denying Joppatowne's motions to dismiss and to strike. In the alternative, Joppatowne asks that this case be remanded to the District Court with instructions to consider and apply the retention-of-subject-matter jurisdiction factors established by this Court in <u>Shanaghan</u>.

## LOCAL RULE 34(a) STATEMENT

Pursuant to Local Rule 34(a), Joppatowne respectfully requests oral argument. Given the complexity and record-intensive nature of this appeal and the presence of questions of first impression, oral argument would assist the Court's consideration.

Respectfully submitted,

JOPPATOWNE G.P. LIMITED
PARTNERSHIP

By: /s/     Charles M. Kerr
*Counsel for Appellant*

Charles M. Kerr
Kathleen M. McDonald
KERR MCDONALD, LLP
111 South Calvert Street, Suite 1945
Baltimore, Maryland 21202
(410) 539-2900
ckerr@kerrmcdonald.com
kmcdonald@kerrmcdonald.com

*Counsel for Appellant*
*Joppatowne G.P. Limited Partnership*

## CERTIFICATE OF COMPLIANCE WITH RULE 32(a)

Certificate of Compliance with Type-Volume Limitation,
Typeface Requirements and Type Style Requirements

1.    This brief complies with the Type-volume limitation of Fed. R. App. 32(a)(7)(B) because:

The word count of this brief is 12,833 words.

54

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

This brief has been prepared in a proportionally spaced typeface using Microsoft Word, Times New Roman, 14 point.

July 14th, 2014

_____/s/ Charles M. Kerr_____

*Counsel for Appellant*

## CERTIFICATE OF SERVICE

I hereby certify that on this 14th day of July, 2014, I caused the foregoing Brief of Appellant/Cross-Appellee Joppatowne G.P. Limited Partnership and Joint Appendix to be filed with the Clerk, U.S. Court of Appeals for the Fourth Circuit via hand delivery and electronically using the CM/ECF System, which will send notice of such filing to the following registered CM/ECF user:

John J. Miravich
FOX ROTHSCHILD LLP
747 Constitution Drive, Suite 100
Exton, PA 19341
(610) 458-3128
jmiravich@foxrothschild.com

*Counsel for Appellee*
*Redner's Markets, Inc.*

July 14, 2014

_____/s/ Charles M. Kerr_____

*Counsel for Appellant*

55